**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | |
|---|---|
| DUSTYN D. BOWLDS,<br><br>Plaintiff,<br><br>v.<br><br>ANTHONY PURDY, et al.,<br><br>Defendants. | CASE NO. 1:24-CV-435-SJF |

**OPINION AND ORDER**

Dustyn D. Bowlds, a prisoner without a lawyer, is proceeding in this case on two claims. First, he is proceeding against Detective Anthony Purdy in his individual capacity for compensatory and punitive damages for violating the Fourteenth Amendment by using excessive force while taking a DNA sample on August 2, 2024, at the Grant County Jail. Second, he is proceeding against Detective David Meeks and Lieutenant Mark Persinger in their individual capacities for compensatory and punitive damages for violating the Fourteenth Amendment by holding his head while Detective Purdy used excessive force to take a DNA sample. Defendants moved for summary judgment on October 31, 2025. [DE 40].[1] Defendants argue they did not use excessive force and that they are protected by qualified immunity. [DE 41 at 6–9]. After several extensions, Plaintiff filed an untimely response. [DE 51; *see also* DE 49]. Defendants filed a reply. [DE 52]. The summary judgment motion is now fully briefed and ripe for ruling.

---

[1] References to "DE" are to docket entries in this case, No. 1:24-CV-00435-SJF.

All parties consented to the jurisdiction of the undersigned Magistrate Judge. 28 U.S.C. § 636(c); [DE 32]. For the reasons below, the Court **GRANTS** Defendants' Motion for Summary Judgment.

## I. Procedural Deficiencies

In their reply brief, Defendants contend that Plaintiff failed to comply with Local Rule 56-1(b). A party moving for summary judgment must separately file a supporting brief and a "Statement of Material Facts." N.D. Ind. L.R. 56-1(a)(2)–(3). A party opposing summary judgment must then file a response brief and a "Response to Statement of Material Facts." N.D. Ind. L.R. 56-1(b)(1)–(2). This Response to Statement of Material Facts must contain numbered responses to each paragraph in the Statement of Material Facts and citations to the evidentiary record supporting each disputed fact. *See* N.D. Ind. L.R. 56-1(b)(2)–(3). If a party fails to properly address another party's assertion of fact, the court may consider the fact undisputed. Fed. R. Civ. P. 56(e)(2); *Turner v. Cox*, 569 F. App'x 463, 467 (7th Cir. 2014) (recognizing a district court's discretion to enforce local rules against pro se litigants by adopting defendant-movants Statement of Material Facts); *Smith v. Lamz*, 321 F.3d 680, 682–83 (7th Cir. 2003).

Despite Plaintiff filing a response brief as contemplated by Local Rule 56-1(b)(1), Plaintiff failed to file a Response to Statement of Material Facts under Local Rule 56-1(b)(2). Plaintiff's response brief also failed to squarely address Defendants' assertions of fact. Indeed, Plaintiff's only factual assertions pertain to the disputability of the video recording and the appropriateness of taking the DNA sample, the latter of which is beyond the scope of Plaintiff's claims. [*See* DE 51; *see also* Court's screening order at DE

9]. Thus, for any facts not pertaining to the video, the Court considers Defendants' Statement of Material Facts, [DE 41], along with affidavits and depositions referenced therein, as undisputed, as permitted by Fed. R. Civ. P. 56(e).[2]

## II. FACTUAL BACKGROUND

The following facts are undisputed, except as otherwise noted. Detective Anthony Purdy is trained in the use of buccal swabs[3] for DNA searches. [DE 41 at 3]. While Plaintiff was a pretrial detainee at the Grant County Jail, Detective Purdy obtained a search warrant to collect DNA from Plaintiff's mouth using a buccal swab. On August 2, 2024,[4] Detective Purdy went to the Grant County Jail to collect Plaintiff's DNA. Plaintiff was then escorted from his cell to the jail's processing desk, where Detective Purdy informed Plaintiff he would take his DNA sample. [DE 41 at 3]. Plaintiff did not want to provide a DNA sample. He stated that he had the right to

---

[2] The Court does not make this finding based on Plaintiff's failure to draft numbered factual responses, as Defendants argued. [DE 52 at 2]. Although a court is entitled "to insist on strict compliance with local rules designed to promote the clarity of summary judgment," *Stevo v. Frasor*, 662 F.3d 880, 886–87 (7th Cir. 2011), when a pro se litigant opposes summary judgment, the court construes their factual contentions liberally. *Smallwood v. Williams*, 59 F.4th 306, 318 (7th Cir. 2023). Here, both parties failed to comply with the formatting requirements for statements of material facts. Defendants failed to *separately* file their Statement of Material Facts and instead included it in their brief. N.D. Ind. L.R. 56-1(a); [DE 41 at 2]. Thus, the Court will overlook Plaintiff's failure to format his singular assertion as a numbered response as required by Local Rules. But, as stated, the Court will not excuse Plaintiff's total failure to respond to Defendants' Statement of Material Facts, and thus deems Defendants' Statement of Material as undisputed except for facts pertaining to the video.

[3] A buccal swab is a thin, plastic or paper stick with a cotton tip. [DE 41 at 3].

[4] There are several discrepancies between Defendants' accounting of the relevant dates and the dates reflected by the record. Defendants represent that the search warrant was issued on August 7, 2024. [DE 41 at 2]. The record reflects that the search warrant was issued on August 1, 2024. [DE 42-3]. Defendants also represent in their brief that Detective Purdy searched Plaintiff on August 7, 2024 [DE 41 at 3], which is contradicted by Defendants' pleadings, [DE 19 at 2], and the record, [DE 42-4 Manual Filing], which demonstrate that Detective Purdy performed the search on August 2, 2024. While these discrepancies are puzzling, the exact dates are immaterial to the parties' disputes and do not warrant denial of Defendants' motion.

refuse, then indicated he did not consent, and proceeded to close his mouth with his head down. [DE 41 at 3; DE 42-4 Manual Filing at 1:00–2:00]. Detective Purdy informed Plaintiff that if he did not cooperate, the assisting officers—Lieutenant Persinger and Sergeant Meeks—would hold Plaintiff down while Detective Purdy swabbed the inside of his mouth. [DE 41 at 3; DE 42-4 Manual Filing at 1:35–1:45]. Plaintiff continued to refuse cooperation. [DE 41 at 3]. Detective Purdy warned Plaintiff again and asked him how he wanted to proceed. [DE 41 at 3].

Plaintiff refused to cooperate, so Lieutenant Persinger and Sergeant Meeks began to hold Plaintiff by his head and neck and assisted with forcing Plaintiff's mouth open. [DE 41 at 4]. Plaintiff continued to resist the swab by trying to keep his mouth closed. [DE 41 at 4]. Defendants were able to open Plaintiff's mouth enough for Detective Purdy to insert the buccal swab and collect DNA from Plaintiff's cheek. [DE 41 at 4]. Plaintiff resisted during the entire swab by trying to close his mouth. [DE 41 at 4[.

The entire restraint and buccal swab lasted about twenty-seven seconds. [DE 42-5 Manual Filing at 1:30–1:57]. As Detective Purdy finished the swab, Plaintiff blew forcefully from his mouth and his front right middle tooth came out, only half of which remained after he had chipped it during a prior fight. [DE 38 at 18, 22]. The other front middle tooth was already missing from the same fight. [DE 38 at 18].

Neither Detective Purdy nor the other assisting officers ever put their fingers or hands inside Plaintiff's mouth. [DE 41 at 4]. Detective Purdy used only a buccal swab to obtain the DNA. [DE 41 at 3]. Detective Purdy contends that he did not feel any resistance as he removed the swab from Plaintiff's mouth. [DE 41 at 4]. Detective Purdy

never applied pressure to Plaintiff's teeth with the buccal swab, nor did he use force other than as needed to obtain the DNA amidst Plaintiff's resistance. [DE 41 at 4].

Plaintiff contends "the video does not show the amount of pressure applied to gain their desired results" and that "[t]he use of restraints and force was not needed to achieve their goal." [DE 51 at 3]. Plaintiff maintains that instead, his DNA could have been obtained through records or a blood draw. [DE 51 at 3]. He believes Detective Purdy used excessive force to insert the buccal swab and to pull the swab out. Regarding Lieutenant Persinger and David Meeks, Plaintiff could not explain how the force used was excessive, only stating that "the way [Lieutenant Persinger and David Meeks were] just holding me it was just . . . it was unnecessary." [DE 38 at 25–26]. When pressed about how exactly Detective Purdy (using the buccal swab) knocked his tooth out, Plaintiff responded "they [were] holding my face forcefully. I don't know. There was a lot going on right then." [DE 38 at 34].

## I. Summary Judgment Standard

A court may grant summary judgment "if the pleadings, depositions, . . . [and] affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists when the evidence is such that a reasonable fact finder could find for the nonmoving party. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986).

"[A] party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but must set forth specific

facts showing that there is a genuine issue for trial." *Id.* (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253 (1968); Fed. R. Civ. P. 56(e)) (internal citations omitted). Opponents to summary judgment must assert more than some metaphysical doubt as to the material facts. *Scott v. Harris*, 550 U.S. 372, 381 (2007). They must present sufficient evidence to show the existence of each element of their case on which they will bear their burden at trial. *Celotex*¸ 477 U.S. at 322–23; *Modrowksi v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013).

A party opposing summary judgment must support an assertion that a fact is genuinely disputed by citing to particular materials in the records. Fed. R. Civ. P. 56(c)(1)(A). "If the opposing party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . . the court may . . . consider the fact undisputed." Fed. R. Civ. P. 56(e)(2).

"[F]acts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts. *Scott*, 550 U.S. at 380 (citing Fed. R. Civ. P. (56(c)). A court's role is "not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. The court has one task and one task only: to decide, based on the evidence of record, whether there is a material dispute that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).

Relevant to this case, video evidence may unsubstantiate a purported genuine issue of material fact only when "the video is so definitive that there could be no reasonable disagreement about what the video depicts." *Kailin v. Village of Gurnee*, 77 F.4th 476, 481 (7th Cir. 2023) (citing *Scott*, 550 U.S. at 380). This narrow and pragmatic

exception does not apply when a video is open to interpretation and when the same video fails to "utterly discredit" a non-movant's version of events. *Id.* Altogether, the unique nature of video evidence still comports with the general rule that if a factual record "could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III. Discussion

Plaintiff was a pretrial detainee at the time of these events, so his claims arise under the Fourteenth Amendment. *Miranda v. Cnty. of Lake*, 900 F.3d 335, 352 (7th Cir. 2018) (citing *Kingsley v. Hendrickson*, 576 U.S. 389 (2015)). "Pre-trial detainees cannot enjoy the full range of freedoms of unincarcerated persons." *Tucker v. Randall*, 948 F.2d 388, 390–91 (7th Cir. 1991) (citation omitted). However, the Fourteenth Amendment prohibits "punishment" of pretrial detainees. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). A Fourteenth Amendment excessive force claim is thus the "functional equivalent" of the Fourth Amendment excessive force standard. *Raddant v. Douglas Cnty.*, 170 F.4th 583, 590 (7th Cir. 2026) (explicitly looking to both Fourth and Fourteenth Amendment precedent when examining objective reasonableness related to pretrial detainee's excessive force claim). The core question of this standard is whether an officer's actions are "objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* (citing *Graham v. Connor*, 490 U.S. 386, 397 (1989)). Thus, to succeed here, Plaintiff must show that the force

knowingly used against him was objectively unreasonable. *Id.* at 592 (citing *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015)).

In assessing a plaintiff's burden, the court should examine several relevant factors, such as the nexus between the need for the use of force and the amount of force used, the extent of the plaintiff's injury, any effort made by the officer to limit the amount of force, and whether the plaintiff was resisting. *Kingsley*¸ 576 U.S. at 397. These factors are not exhaustive, however, *id.*, and courts will also consider whether an officer gave warnings before using force. *Zorn v. Linton*¸ 146 S. Ct. 926, 930 (2026) (per curiam).

The reasonableness of a particular use of force is an objective legal determination to be made by the court. *Dockery v. Blackburn*, 911 F.3d 458, 464 (7th Cir. 2018). Likewise, when excessive force claims are intertwined with the defense of qualified immunity, the court gives "enhanced deference to officers' on-scene judgments about the level of necessary force." *Id.* (citing *Abbott v. Sangamon Cnty.*, 705 F.3d 706, 725 (7th Cir. 2013)) (internal quotations omitted). As Defendants' motion for summary judgment is intertwined with their affirmative defense of qualified immunity, the Court begins there.

**A. Qualified Immunity**

A qualified immunity defense involves two related questions. The court may first examine whether the official violated a federal right. Second, the court considers whether "'the unlawfulness of their conduct was clearly established at the time.'" *Villalobos v. Picicco*, 168 F.4th 1057, 1062 (7th Cir. 2026) (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018)). If either question is answered negatively, the defendant is

immune. *Id.* A district court may grant a motion for summary judgment on qualified immunity grounds by relying on either prong of the test. *Id.* at 1063 (citing *Pearson v. Callahan*, 555 U.S. 223, 231–37 (2009)).

Once a defendant raises a qualified immunity defense, "it becomes the plaintiff's burden to defeat it." *Estate of Escobedo v. Martin*, 702 F.3d 388, 404 (7th Cir. 2012). Thus, a plaintiff bears the burden of proving both a violation of a federal right and that the unlawfulness of the conduct was clearly established at the time the violation occurred. *Id.* at 1062; *Mabes v. Thompson*, 136 F.4th 697, 705 (7th Cir. 2025) (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Critically, as to the second element, a plaintiff does not meet this burden by citing generic legal principles. *Villalobos*, 168 F.4th at 1063 (citing *City of Tahlequah v. Bond*, 595 U.S. 9, 12 (2021)). Instead, a plaintiff alleging excessive force must either: (1) identify analogous precedent clearly establishing the law and articulating the right at issue with analogous application, *id.* (further citations omitted); or (2) "show 'that the force was so plainly excessive that, as an objective matter, the [] officers would have been on notice that they were violating [the Constitution.]'" *Cibulka v. City of Madison*, 992 F.3d 633, 639 (7th Cir. 2021) (quoting *Weinmann v. McClone*, 787 F.3d 444, 450 (7th Cir. 2015)). Although an analogous case need not be identical, it must be clear enough that it places the constitutional question beyond debate. *Villalobos*, 168 F.4th at 1063 (quoting *Schimandle v. Dekalb Cnty. Sheriff's Off.*, 114 F.4th 648, 655 (7th Cir. 2024)). Even with the second route, there must be "some settled authority" showing that "a general constitutional rule" applies "with obvious clarity to the specific conduct in question." *Cibulka*, 992 F.3d at 640 (citations omitted).

A district court's assessment of qualified immunity must be structured specifically to each defendant and to each claim brought against them. *Mabes*, 136 F.4th at 706 (7th Cir. 2025) (citing *Est. of Williams v. Cline*, 902 F.3d 643, 651 (7th Cir. 2018)). Accordingly, the Court addresses each Defendant in turn.

**i. Detective Purdy**

Plaintiff's response brief does not respond to Defendants' qualified immunity arguments. Instead, Plaintiff's response brief mentions only general legal principles, without citation, and without application or discussion of how it relates to what he experienced during the buccal swab. [*See* DE 51 at 2]. The Court's own review failed to unearth precedential authority even indicating a possibility the force used in this context was clearly unlawful or plainly excessive. Officers may be permitted to use significant force when a detainee is resisting, and that would still not amount to objectively unreasonable excessive force under *Kingsley* and *Graham*. *C.f. Turner v. City of Champaign*, 979 F.3d 563, 569 (7th Cir. 2020). Plaintiff appears to concede this, stating in response that "[f]orce may be used to restore or maintain order," [DE 51 at 2]. Yet Plaintiff fails to articulate why force was inappropriate after he resisted the search. Plaintiff's brief is devoid of any argument that the pressure Detective Purdy applied was beyond what is permitted in like circumstances of resistance, and his brief is likewise devoid of any analogous precedent supporting such an assertion.

Nor has Plaintiff offered a modicum of settled authority to signal that a general rule applies with obvious clarity. Although Plaintiff disputes whether the video recording shows the extent of force used by Detective Purdy, he fails to explain how the

extent of force was objectively unreasonable in this context. Thus, the Court cannot say that Detective Purdy's actions were "plainly excessive" either. *Cibulka*, 992 F.3d at 639.

Moreover, Plaintiff's failure to dispute Detective Purdy's assertion that he used no more force than necessary to collect the DNA effectively affirms Defendants' position that Detective Purdy's force was objectively reasonable. *See* Section II, *supra* at 4–5; *Lamz*, 321 F.3d at 683 (reasoning that failing the "obligation to respond with particularity to the statement of material facts" "results in an admission"). Plaintiff's contention, that the video does not show the level of force used, may dispute the extent of force in terms of a physical calculus, but it fails to dispute the objective reasonableness of it. Whatever level of force Detective Purdy employed, Plaintiff has failed to shoulder his burden of proving that it was clearly unlawful at the time, in the context of multiple warnings and Plaintiff's resistance. Thus, Detective Purdy is immune.

**ii. Lieutenant Persinger and Sergeant Meeks**

Although Seventh Circuit precedent cautions against jumbling the factual analysis of separate defendants, Plaintiff's claim against Sergeant Meeks is identical to that of Lieutenant Persinger. Plaintiff fails to distinguish Lieutenant Persinger's force and Sergeant Meek's force used during restraint.

Lieutenant Persinger and Sergeant Meeks are protected by qualified immunity because Plaintiff fails to establish the unlawfulness of their use of force.[5] Even

[5] Defendants' argument as to Lieutenant Persinger and Sergeant Meeks is mostly devoted to a "failure-to-protect" analysis. [DE 41 at 9]. The Court's prior order, [DE 9], does not mention failure to protect and instead suggests Plaintiff's grievances are with how the two officers held his head. Still, Defendants

construing Plaintiff's argument liberally, his sole assertions that could relate to Lieutenant Persinger and Sergeant Meeks are that "the use of restraints and force was not needed [sic]" and that the video does not show the pressure used. [DE 51 at 3]. As with Detective Purdy, Plaintiff cites no authority establishing that restraints of the head and neck are objectively unreasonable after a detainee resists compliance, despite multiple warnings.

Nor does Plaintiff meet his burden by arguing that restraints were avoidable through an alternative blood draw. The only issue before the Court is whether Lieutenant Persinger used excessive force while restraining Plaintiff's head. [*See* DE 9]. Detective Purdy obtained a facially valid warrant to collect DNA from Plaintiff's mouth. [*See* DE 42-3]. Even assuming Plaintiff would comply with a blood draw, Defendants were not required to seek alternative means in the face of Plaintiff's noncompliance. Plaintiff's reliance on the restraints and buccal swab being "unnecessary" is thus misplaced and fails to meet his burden of establishing the unlawfulness of Lieutenant Persinger's conduct.

Plaintiff's reliance on general legal principles falls short of placing the right beyond debate or showing that force was plainly excessive. Thus, Lieutenant Persinger and Sergeant Meeks are immune.

## IV. CONCLUSION

For these reasons, the Court

---

argued that the two assisting officers' actions were reasonable, [DE 41 at 6], which is sufficient for a motion for summary judgment.

(1) **GRANTS** Defendants' Motion for Summary Judgment [DE 40]; and

(2) **DIRECTS** the Clerk to enter judgment in favor of the Defendants and against Plaintiff Dustyn Bowlds and to close this case.

**SO ORDERED** this 3rd of September 2026.

s/Scott J. Frankel
Scott J. Frankel
United States Magistrate Judge